OPINION OF THE COURT
Kaye, J.
There having been no State interrogation, defendant’s right to counsel was not violated where, though represented by counsel in a State court prosecution against him, he testified without counsel on behalf of a friend in a Federal prosecution against the friend on related charges.
The essential facts are undisputed. On February 8, 1983, after receiving a tip that there was an illegal alien with a gun, officers of the Immigration and Naturalization Service (INS) entered a Manhattan apartment shared by defendant and Raphael Rolando Rosario. They searched the apartment, found a defaced pistol and a sawed-off shotgun, and arrested both men. The next day, based on information supplied by an INS agent, a felony complaint was lodged in Criminal Court, *535 New York County, charging defendant with possession of a forged instrument and criminal possession of a weapon. The complaint referred to both weapons found in the apartment. Oscar Gonzalez-Suarez filed a notice of appearance on defendant’s behalf. Simultaneously, Rosario, an illegal alien, was indicted in the Federal court for possession of the pistol, and was represented by Raymond Sussman.
In late March or early April 1983, in the course of trial preparation Rosario introduced defendant to Sussman as a defense witness, and the two discussed Rosario’s case. Moreover, as a courtesy, on April 19, 1983, Sussman aided defendant in securing a month’s adjournment of his case, when defendant’s own lawyer failed to appear in Criminal Court and Sussman, there on unrelated matters, encountered defendant. Rosario’s trial in Federal court commenced April 25, 1983. The case agent for the prosecutor was one of the officers who had made the arrest.
Sussman secured a subpoena for defendant’s testimony at Rosario’s trial; Rosario himself did not testify at the trial. After conferring privately with Sussman on two further occasions about his testimony, defendant testified for Rosario— with no Miranda warnings — both at the Mapp hearing and thereafter at the trial, where he was cross-examined by an Assistant United States Attorney. In his direct testimony, responding to Sussman’s questions, defendant for the first time recounted that he saw the gun in the apartment while he was preparing for bed, and he put it under the bed. This testimony was essential evidence in the State prosecution against defendant for possession of the pistol.
Following Rosario’s Federal conviction, on May 12, 1983, defendant was indicted by a New York County Grand Jury for criminal possession of a weapon in the third degree — the pistol. Sussman filed a notice of appearance for defendant on May 24, 1983, the day of his arraignment. Sussman acknowledged that he had never met Oscar Gonzalez-Suarez, never spoken on the telephone with him, had no discussion with him about the case, and received no case file or other document from him when he took over defendant’s representation.
Upon receiving notice that defendant’s Federal testimony would be used in the State prosecution, defendant sought suppression on the grounds that he had not been given Miranda warnings and had been denied his right to counsel. The People, in turn, sought the disqualification of Sussman, con *536 tending that they would call both Sussman and Rosario as witnesses, and that defendant would be prejudiced in cross-examination by the fact that Sussman had represented Rosario. The hearing court denied the People’s motion to disqualify Sussman, but granted defendant’s suppression motion, and the Appellate Division affirmed, without opinion. Only the suppression ruling is challenged on appeal.
The question presented by this appeal is the scope of defendant’s right to counsel in the State criminal proceeding, which attached by virtue of either the filing of the felony complaint (see, CPL 1.20 [17]) or the notice of appearance of counsel in his behalf in State court.[1] More particularly, defendant urges that his right to counsel was violated when he testified in Federal court in a matter related to the State prosecution against him. We conclude that it was not.
The Sixth Amendment right to counsel assures the accused a fair trial by guaranteeing professional assistance in preparing and presenting a case and coping with the intricacies of substantive and procedural criminal law (United States v Ash, 413 US 300; Powell v Alabama, 287 US 45; see also, Kirby v Illinois, 406 US 682, 689; People v Ridgeway, 101 AD2d 555, 560-561 [Hancock, Jr., J.], affd 64 NY2d 952; People v Settles, 46 NY2d 154, 161). Additionally, while the line between the Fifth Amendment protection against self-incrimination and the Sixth Amendment right to counsel is not always crystal-clear, the right to counsel protects persons, whether in custody or not, against the use of incriminating statements made as the result of governmental interrogation, including prosecutorial inducements to make such statements without the assistance of counsel (see, e.g., United States v Henry, 447 US 264; Brewer v Williams, 430 US 387; Massiah v United States, 377 US 201). In this State the right to counsel, both as to the time of its attachment and as to its waiver, is broader than the protection afforded under the Federal law (see, People v Settles, 46 NY2d 154, 161, supra). The rule that, once an attorney enters the proceeding, the police may not question defendant in the absence of counsel is "a rule grounded in this State’s constitutional and statutory guarantees of the privilege against self-incrimination, the right to the assistance of coun *537 sel, and due process of law”. (People v Hobson, 39 NY2d 479, 483.)
Thus, in addition to minimizing the adversarial imbalance in trial preparation and presentation, the right to counsel protects an accused in pretrial dealings with the overwhelming, coercive power of the State (People v Skinner, 52 NY2d 24, 32; People v Settles, 46 NY2d 154, 161, supra) by excluding incriminating evidence obtained by the State in violation of that right. Concomitantly, the exclusion of incriminating evidence obtained by agents of the State operates to deter their interference with the rights of the accused.
Central to the scope of the right of counsel is the involvement of the State in eliciting that evidence. The right to counsel does not clothe an accused with absolute immunity as to all incriminating statements made outside the presence of a lawyer. While the right to counsel guarantees that an accused will have a competent advocate in confronting the power of the State, that protection does not extend to encounters with private citizens absent collusion of the State. The right to counsel, quite simply, requires the exclusion of statements obtained from a person whose right to counsel has attached, through interrogation by agents of the State; statements induced by nongovernmental entities, acting privately, do not fall within the ambit of this exclusionary rule. The requirement that the incriminating evidence be elicited by State interrogation serves both the underlying purpose of minimizing the imbalance between the accused and the State and the goal of deterring improper conduct on the part of its agents.
Consonant with the important interest to be protected, the word "interrogation” must be read broadly. Plainly, "interrogation” goes beyond the direct custodial questioning by police or prosecutors such as took place in virtually all of our right to counsel cases. Interrogation includes not only formal questioning by the police or prosecutor, but also more subtle forms of State inducement to make incriminating statements (see, People v Maerling, 46 NY2d 289, 303; see also, People v Ferro, 63 NY2d 316, 322 [5th Amend]; White, Interrogation Without Questions: Rhode Island v Innis and United States v Henry, 78 Mich L Rev 1209, 1236-1241; 1 LaFave, Criminal Procedure § 6.4, at 473). By the same token the State cannot, through the facade of private citizens, elicit incriminating evidence without infringing defendant’s right to counsel (see, People v Cardona, 41 NY2d 333; Maine v Moulton, 474 US —, 106 S Ct *538 477, 487-488). Moreover, the State’s actual motivation in interrogating defendant is irrelevant (see, People v Townes, 41 NY2d 97).
We need not even reach the question whether interrogation by Federal officers, independent of any State collusion, could ever result in a violation of the State right to counsel and the exclusion of evidence in a State proceeding, because here it is plain that the incriminating evidence was not elicited by governmental interrogation.
Though represented by counsel, defendant for his own purposes chose to cooperate privately with Sussman, without his lawyer.[2] Defendant points to the fact that an INS agent furnished the information for the felony complaint, and that an INS agent was assisting the Federal prosecutor. Nonetheless, the incriminating statements were uttered in response to Sussman’s question, apparently an unanticipated consequence of a bold defense strategy, and defendant was examined by the United States Attorney only after he had already incriminated himself.[3] While certain immaterial details may have emerged on cross-examination — for example, that the gun was on the television set — defendant had already admitted on direct questioning that he had taken possession of the pistol and secreted it. Significantly, defendant did not even seek suppression of only the cross-examination. Thus, to the extent that defendant may have been induced by anyone to incriminate himself, such inducement was not that of the State but of a private attorney, now defendant’s own lawyer. There is no evidence, indeed no contention, that the State used Sussman to elicit the incriminating statements from defendant.
Although defendant incriminated himself in a Federal courtroom, the physical setting itself does not transform defendant’s testimony into an act of State interrogation. Even incriminating statements given in the most coercive setting— prison — are not subject to suppression absent involvement of the police or the prosecutor in eliciting that evidence (see, People v Cardona, 41 NY2d 333, supra). Nor does the subpoena constitute State involvement in the interrogation of defendant. The subpoena was issued at Sussman’s instance, and not as a vehicle for the State to secure defendant’s testimony.
*539 Defendant’s right to counsel was not infringed because his incriminating statements were not obtained through interrogation by the police or the prosecutor, and the statements were therefore improperly suppressed. Accordingly, the order of the Appellate Division should be reversed and defendant’s motion to suppress denied.

. By contrast, there having been no proceedings against defendant in the Federal court, no right to counsel was triggered there (see, United States v Duvall, 537 F2d 15; Brewer v Williams, 430 US 387; 1 LaFave, Criminal Procedure § 6.4, at 466).

. No contention is made that, by assisting defendant in securing an adjournment of the State proceeding, Sussman thereby became a lawyer for defendant obligated to advise him concerning his Federal court testimony.

. We do not decide that any different result would follow if the incriminating evidence had been elicited by the Federal prosecutor.