The People of the State of New York, Respondent, v Anthony Vitiello, Appellant. [780 NYS2d 380]—

Appeal by the defendant from a judgment of the Supreme Court, Queens County (Eng, J.), rendered June 18, 1999, convicting him of manslaughter in the first degree and tampering with physical evidence, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress physical evidence.

Ordered that the judgment is reversed, on the law, that branch of the defendant's omnibus motion which was to suppress physical evidence is granted, and a new trial is ordered.

On May 8, 1995, the victim was killed by a gunshot during an altercation in an apartment with the defendant and the defendant's girlfriend. When the police arrived at the scene at about 2:30 P.M., the defendant had already fled, his girlfriend was in the apartment, the victim was lying on the kitchen floor, and the gun could not be found. The defendant eventually turned himself in and was brought to the precinct. At about 4:00 P.M., after he was read his Miranda rights (see Miranda v Arizona, 384 US 436 [1966]), he agreed to tell what had happened. He claimed that someone had given him the gun to fix because it did not work, and it had accidentally discharged during the altercation when it fell out of his hand.

When the defendant initially was asked about the gun's location, he stated that it was still in the apartment. When the police told him that the gun could not be found, he still claimed that the gun was in the kitchen. He subsequently told his girlfriend not to cooperate because she could be arrested as an accomplice. A sergeant then promised the girlfriend that she would not be arrested if she told him where the gun was located. She was told that the sooner the allegedly defective gun was found, the more likely that it could be used to support the defendant's claim that the shooting was an accident. She insisted that she did not know where the gun was.

At about 7:45 P.M., after the defendant asked to speak with an attorney, the sergeant told the girlfriend that the police could no longer question the defendant; however, she could still ask him about the gun. At that point, the defendant came out of the interview room and told the police that he would reveal the gun's location. He was told that the police could no longer speak with him because he had asked for an attorney, and he returned to the interview room with his girlfriend.

About 20 minutes later, the defendant and girlfriend both stated that they would reveal the gun's location. The girlfriend then told the police where the gun was hidden, and it was subsequently located based on her statement.

The hearing court denied that branch of defendant's omnibus motion which was to suppress the gun. The defendant argues that the gun should have been suppressed because the police, by using his girlfriend as an agent, violated his right to counsel. We agree.

"The right to counsel, quite simply, requires the exclusion of statements obtained from a person whose right to counsel has attached, through interrogation by agents of the State" (*People v Velasquez*, 68 NY2d 533, 537 [1986]). "Interrogation includes not only formal questioning by the police or prosecutor, but also more subtle forms of State inducement to make incriminating statements" (*id.* at 537; *People v Ferro*, 63 NY2d 316, 322 [1984], *cert denied* 472 US 1007 [1985]; *People v Maerling*, 46 NY2d 289, 303 [1978]). The police cannot, as they did in this case, act through the facade of a private citizen to elicit incriminating evidence without infringing on the defendant's right to counsel (*see Maine v Moulton*, 474 US 159 [1985]; *People v Cardona*, 41 NY2d 333 [1977]).

Under the circumstances of this case, the police should have known, in light of defendant's own stated desire to reveal the gun's location, that his girlfriend was reasonably likely to elicit the incriminating information from him (*see People v Ferro,*

*supra* at 323-324). Where, as here, the only possible object of a police action was to elicit a statement from a defendant, his right to cut off questioning was not scrupulously honored (*see People v Ferro, supra*).

Furthermore, contrary to the conclusion of the hearing court, emergency circumstances did not excuse the police conduct in this case. At the time of the police action, there were no exigent circumstances to justify their conduct (*see Matter of John C.,* 130 AD2d 246, 254 [1987]). The crime scene had been secured, and there was no evidence that the gun was a threat to public safety. The police were clearly acting based upon a need to solve the crime and not upon any objective need to protect themselves or the public (*see Matter of John C., supra* at 254).

Contrary to the People's contention, under the facts of the instant case, the error in admitting the gun and expert testimony regarding its condition was not harmless, and a new trial is warranted (*see People v Crimmins,* 36 NY2d 230 [1975]).

In light of our determination, we need not reach the defendant's remaining contentions. Smith, J.P., Krausman, Adams and Skelos, JJ., concur.